All right, Mr. Whitehead, you may proceed. Thank you, Honors Man. May it please the court, my name is Jonathan Whitehead. I'm here on behalf of Jerry Bachman, the plaintiff appellant in this case. And with the court's permission, I'd like to reserve three minutes for rebuttal. In this case, Plaintiff Jerry Bachman challenges her termination by Hickman Mills School District in suburban Kansas City. Hickman refused to provide any religious accommodation to Bachman's beliefs and terminated her for violating Hickman's directive that each teacher must speak consistent with each student's chosen identity. A choice not based in science or a diagnosis, but as the school admits, based entirely on the individual student's feelings as a matter of respecting the student's right of choice. Thus, the student could vary the speech requirement from teacher to teacher and even class to class. The lower court dismissed this on a Rule 12b-6 motion saying the policy was neutral to faith, was not protected by the free speech clause, and was not protected by the speech clause because her speech was an official duty. There are lots of points to address, but most simply we think this case could be considered in terms of the lower court erring on the free speech case, free speech claims, and on the free exercise claims. Erring that the plaintiff failed to prove any sign of discrimination in its pleading. Can I ask you about free exercise? So I get the free speech, that seems like it's a stronger claim. But on free exercise, it is neutral and generally applicable. And there's no showing, there is a showing as to discrimination, which is that your client didn't use preferred pronouns, other people didn't use pronouns, etc. But I don't understand there to be a proof of religious discrimination. And so I'm just wondering what we have in the complaint that allows the free exercise claim to go forward. Well, I think, Your Honor, the proof of religious discrimination is that religious accommodation was held to be impossible. So in this case, the school district's computers have a female identity. Other teachers, the district admits in its brief, were using a female identity. And only Ms. Bachman, in this case, the only religious teacher on the record, the only teacher to request religious accommodation... Do we know that from the complaint? That she was the only one? Because that was by promise. I didn't understand that to be alleged. So she's the only teacher that was requested religious accommodation, correct. And the school district's response is there can be no religious accommodation in this area. So it is specifically the area of religion that has been ruled out as impossible to accommodate, even as other teachers are allowed to use the same language. So if other teachers can use the very words Ms. Bachman wants to speak, but because she has requested it under a religious accommodation framework, the district says, no, we can't make any accommodation here, then that, by its very definition, meets all the classic tests of religious discrimination. That's selective enforcement, certainly under Masterpiece, where there's certain bakers that have one side of the message and the courts there never enforce that claim against anybody. But when the cake artist stands up and says, I have religious beliefs, they say, well, that violates our policy. So it's the policy that only rejects the religious claims that proves there's a religious discrimination in here. But here, if I understand the policy, I mean, putting aside the wisdom, you've described it, but the policy was what the student was asking of the teacher. So if that's the policy, how was someone treated differently than Ms. Bachman? In this case, it appears the student is, in effect, allowing other teachers. The student gets to decide who is accommodated. Right, right. But the policy, if we look at the policy, policy lets the student do that, right? So the student asks Teacher A one thing and Teacher B another. But under the policy, each teacher just simply accedes to what they said. And so the policy is consistent, so there's no one that's been treated differently, at least in the complaint. I think that looks far more like Lukumi, where there's a facially neutral policy, no animal sacrifice in this town, but it's only enforced against religious believers. And so in this case, I don't think the government can... Just a second, but what would you enforce if the same student asked Teacher B to use a different pronoun? What would you be enforcing? Well, I mean, I think the problem with outsourcing to the student is that it really prevents the strict scrutiny analysis. So for example, with Ms. Bachman, why is it that some other teacher can use this identity in another class hour? And why shouldn't Ms. Bachman have the benefit of whatever the student allows another teacher to use the identity that Ms. Bachman wants to use? Isn't that a criticism of the policy, though? Not necessarily a different treatment of the teachers? In other words, you're criticizing the policy. You're saying, well, that just doesn't... That shouldn't be the policy. But I don't know that it means that there's been two people, two teachers being treated differently under that policy. I think when one teacher gets to use the female identity that Ms. Bachman says her religious beliefs require her to use, and another teacher is told... But only Ms. Bachman is fired for using that identity. I think the policy then itself is suspect. The government can't outsource to a heckler or to another student or to... It can't put beyond question the reasons for the accommodation. And so in this case, I think there's at least a hint of religious discrimination by the student. The student is parsing out these allowances based on the student's beliefs about Ms. Bachman's religion. But that, again, just goes to show the government can't have a speech policy that lets the student decide which message can be spoken and then, in effect, allows the student to determine the accommodations. The government has to be able to answer here and balance the interests, even accepting that there might be legitimate state interest. The government has to be able to conduct a strict scrutiny analysis. And it can't just outsource that to a heckler so that there's a heckler's veto and say, well, the student didn't want us to give you an accommodation. No, we need to know why the teacher can't receive this accommodation. I have a question about... I know this is on a motion to dismiss. So I guess we're really just looking at the complaint. But I've got some questions about the policy. And I want you to tell the court, if you can, whether any of this is alleged or the answer to my questions are alleged or contained as factual allegations in your complaint. It has to do with this policy. And the first question is, written policy or non-written policy? The policy was at first oral, Your Honor, and then it was written in a letter, in a reprimand letter, yes. So that's alleged in the complaint. And then the policy defers to the student's choice. When is that choice made and registered? Is it a one time for the entire school year? Can the student make the choice each day? Can the student make the choice in the middle of a class? What does the complaint tell us anything about that? What the complaint tells us is that Ms. Bachman is aware that, yes, the student was in the middle of the same year giving different teachers different demands by different hours as to the identity. There are at least three identities for one student floating amongst various teachers in those hours. And we know in the complaint and in the briefing and response that the district has said that's fine because the student only complained about Ms. Bachman and her request for religious accommodation in that particular hour. So the student can change his mind or her mind about the name that they're to be called whenever they want to? Correct, Your Honor. The way it's both written and we understand the school has enforced it and that's in the complaint. And the decision is not uniform throughout the school day, throughout the classes? Correct. Or even between actors, yes. That certainly is a key part of the complaint in the first free speech analysis that the government in its effect saying Ms. Bachman can't use the labels the government uses in its own computer system. So unlike so many other free speech cases where we talk about what's an official duty, here Ms. Bachman is begging just let me use the definition that the government is using in its own computers. But she's denied that. She's fired for using the very terms that the government itself uses. So we know it's not official duty speech under Garcetti because as Janice tells us, official duty speech is employees acting as a spokesperson. Here Ms. Bachman is begging to be the spokesperson for the government in this particular circumstance. She'd like to use that term and the government says no, you can't use our message. You have to use the student's message. Can I just follow up on one thing related to something we were discussing a little earlier, which is what I don't understand the complaint to be making, but you can correct me if I'm wrong, it's what's called a hybrid claim. We recognized it in the telescope media case where you could have a free speech claim that is buttressed by the free exercise. And I don't understand you to be making that claim, but let me know if I'm wrong and there's allegations that lead to that conclusion. Where the reason for the speech is religious and therefore the claims are inseparable or go together. Of course, hybrid claims actually, I've got some history with Woodmore, Your Honor, and Trina Lutheran. And so yes, I think clearly Ms. Bachman would say her speech is religiously motivated. So I think to the extent you're looking for evidence that it could be a hybrid claim, then yes, I think this is a religiously motivated free speech claim. So that should be a hybrid claim under there. And then under the free exercise clause cases, we are alleging that there was religious motivations for the differential treatment. So I think they would both contain both elements, both religion and speech on both sides. Does that answer your question? Let me go back just briefly under free exercise. Smith tells us the classic case of not generally applicable and not neutral is where there is individualized assessment made. So no matter what other rules might apply, Smith says when there's individualized assessment, that is by definition not generally applicable or neutral to religion. And in this case, the facts are clear. It is an hour by hour, teacher by teacher, situation by situation, assessment between the student and the district. The district asks, is the student satisfied hour by hour? That is classic individualized assessment. And so for that reason alone, this policy can't be seen as generally applicable and neutral towards faith. Can I ask, I just want to back up and ask a general philosophical question. Your client, whose speech was it that she was relaying? Was it the school speech or the student speech? And this gets to what Judge Shepard was getting at, which is the student was picking their pronouns maybe hour to hour. Who knows? It seems like there was definitely some inconsistency here. So are they saying what the child is or the student is forcing them to say? And this gets to official duties as well. Or is this the school speech? It's very tricky. Yeah, I think the error in the policy is that it is compelling the student's speech by the teacher. And so this is far closer to Barnett with pronouns, the Pledge of Allegiance clays, or Woolley, where the government certainly can compel you to have a license plate, but it can't require you to put a motto on it. And so this is much closer to the space where the teacher admittedly is in the classroom because of her job duties. But even when she's there, they can't make you recite the pledge. They can't make you put on your license plate, even men can become pregnant. That is much closer to the situation where in between the class, and think about how it comes up. Ms. Bodman, what am I? Well, the government says you're a female. Well, no, that's not what I want to know. I want to know what do you say I am. So it's not the government's message. Again, Ms. Bodman would like to give it. She's been fired for giving the message that is in the government's computers. And because of that, we think that violates both free speech and free exercise. I'd like to reserve the rest of my time for rebuttal and answer questions there. Mr. Gordon. Thank you. May it please the Court, Paul Gordon, I represent the Appellees Hickman Middle School District, Derek Jordan, and Yaw Obing. The District Court was correct in dismissing all of Appellant's claims for the reasons stated by the District Court and also for additional reasons, such as the individual defendants being entitled to qualified immunity and that Title VII claims cannot be made against supervisors. Before addressing the specific claims that were properly dismissed, I want to deal with an initial issue, and that is that, especially in her briefing, Appellant's arguments are largely based on two assertions which are not found anywhere in her complaint. One, that the directive on its face excluded administrators, and the second was that other teachers were allowed to violate the directive. The fact that the school database, it's not a person, it's a database, happens to list these students by the genders and names that they were enrolled as initially, does not mean that administrators were allowed to use those names when addressing the students. Second of all, and this is something that Judge Kelly alluded to, is that this was not a situation where there was any teachers who were allowed to violate the directive. It didn't matter what religion they were or if they were atheist, it didn't matter. The directive applied equally to everyone. Yeah, but here's the problem. We've got to draw all inferences in favor of the plaintiff, and here what we have in the complaint, it's pretty thin, but we have in the complaint other people called these same students different names and were not terminated. And so that at least raises the specter, a plausible claim of discrimination. Now whether we get to religious discrimination, you heard me talking to opposing counsel, but at least on the face of the complaint, normally when you say this guy or this gal was treated differently than this guy or this gal, that's discrimination. It's enough to get you passed a motion to dismiss if it's connected to a protected class. How I would respond to that, Your Honor, would be that what is consistent is the policy. The policy is the staff member, teacher here, refers to the student by whatever name the student wishes. That is consistent. That was not done inconsistently. It may be true and it was alleged, and we're dealing with a motion to dismiss, it was alleged that there were some teachers who were not, where the students didn't voice that they wished to be called a different name. Why that could be? Could be a whole lot of reasons. Could be that particular student didn't feel comfortable in that class doing that. But the key then becomes, it circles to what appellant's counsel has said, is that it goes back to the student and that appellants are trying to hold the school district and the superintendent and principal essentially vicariously liable for the discrimination or discriminatory motive by the students. How do we know though? See, here's where I think we differ. How do we know that the other teachers didn't violate the policy? Is that in the complaint? No. There's absolutely nothing in the complaint that says that the school was aware of any teacher violating the directive and didn't punish that teacher. That's a legitimate non-discriminatory reason. And that's the problem I'm having with the motion to dismiss. You're saying we equally applied the policy to everybody. Well, I don't know that. That's not in the complaint. You're going to have a chance to prove that, but I just don't know that. All I know is two people were treated differently because that's what he pled. And you call that artful pleading, but in most cases that's enough to get past the motion to dismiss. Well, Your Honor, I believe if looking at the pleading, if you took everything the complaint is true, which you must under this standard, all that would say is that it's about what the defendant is to the school district. And what did the school district do? The school district isn't alleged to have made a knowing difference. I would agree with you. If there was an allegation that the school was aware of other teachers that were not acting in accordance with the directive and were allowed to not be reprimanded for it, but the district just chose to reprimand Ms. Bachman, I would agree with you that would get them past the motion to dismiss. But here they've never made that allegation. I'm just going to press this, because if we had a black employee and a white employee, they said the exact same thing at work, and the company comes back and says, well, you know what, the black employee was a supervisor or vice versa, the other one was a line employee, and the black employee can say that under our policy, but the white employee can't say that, would we then on a motion to dismiss dismiss that? I mean, that just seems to me to be like a prima facie case of discrimination. And that's kind of what we have here. You're saying Ms. Bachman can't say it, but because the student allowed the other person to say it, then as long as it did violate the policy, the motion to dismiss should be granted. Yes, Your Honor. The argument I'm making is that in that situation, talking about a black employee or white employee, At racial discrimination, we get all those cases. That's the only reason I'm using that example. Right, I understand. Yeah. But that's a comparator, and that would be something that would be in a complaint. If it was an African American person, they would say white employees were treated different because the company didn't punish the white employees for doing it. That's a comparator. There is nothing in this complaint that makes that argument. So this is about religious discrimination. That's why I had a conversation with the other side about this. And I just wonder, and this may not be the case, but people don't talk about religion at work necessarily, and they don't know what religious obligations are. With the other immutable classes that are protected, gender, race, it is really easy to identify a comparator because you see the person is different from somebody else by some immutable characteristic. With religion, it's a little harder because you can't look at somebody and say, well, you're definitely Protestant, or you're definitely Jewish. And so that's a hard thing. I mean, I'm not saying we should treat religious cases differently, but I wonder whether we should draw some inferences here that maybe some of those were not the same religion as Ms. Bachman. I think that would be more in play here, Your Honor, if there was even an allegation that there was any comparators of anybody else. She never alleges in her entire complaint that any other teacher, no matter what religion they were, or non-religion, were allowed to violate the directive. Okay, so we're back to the directive. Exactly. Which, again, I disagree. I think that's a legitimate non-discriminatory reason. But I'm not going to hold you up anymore. Well, it looks to me, and let's see what you think about this, but it looks to me that you can make a pretty good argument that under the allegations of the complaint, as it refers to the ability of some teachers to use different pronouns and names, then Ms. Bachman was being compelled to use that. The exceptions to the so-called policy actually creates a situation in which there is no policy. I mean, if you ask the question, what's the policy of the school district as to what pronouns and names should be used with respect to a transitioning student? And faced with that hot-button issue, it looks to me like the complaint alleges that the school district attempted to punt and defer this and put the decision off on the students. So the net effect is, as I see it, you really have a situation here where the school district actually has no policy, has no written or oral policy on this. So that leaves us with a situation where the plaintiff receives discipline, retaliation for uttering the same words or refusing to utter the particular words that other teachers were not disciplined for. Was it a written policy? No, it was not a written policy. That's why I have always consistently used the word corrective. That's something that needs to be fleshed out further here. And when was the policy developed? Was it developed when Ms. Bachman's situation came up? It would be nice to know that as the policy changed. What is the policy? Can the students decide from one day to another that they want to be called a different name? Could they decide in the middle of a class that they no longer want to be called one name and they want the teacher to call another? It seems to me all of those things need to be explored here before this thing can be adequately addressed. What are your thoughts? My thoughts are, Your Honor, that much of those criticisms of the policy, which is, I think, at the heart of much of appellant's claims, is that it's criticized. Well, it should have been more consistent. It should have been mandated. It should have been put into a database. Those are criticisms of a policy. Those criticisms, whether they have merit or don't have merit, does not equate to there being any infringement on free speech or free exercise or any discrimination. I think that the school has legitimate reasons which... Okay, well, here's a question. What is the policy of the school district on this question? Should the, and I'm just going to call it, the transitioning name be used with respect to a student who is transitioning as opposed to the birth name? What's the policy of the school district? In the communications with staff members, the directive... What's the policy? What's the view of the school district? It's a pretty hot-button issue. It is a hot-button issue. Okay, so what is the official position of the school district? The official position of the school district is that when communicating with a student, that the school staff member is to use the name and pronoun of that student's preference. Okay, and so what I would say is, by adopting that stance, the school district has avoided taking a position on this issue. But... And, Your Honor, I would argue that the school does not require to make a stance on whether or not what a student's true name is or true pronoun. What they want is they want a self... There are several reasons why they adopted this directive. One, because the Department of Education said, pursuant to by-stock, pursuant to an executive order, told the schools that gender identity was protected under Title IX. So they're trying to comply with the law. Secondarily, and regardless, it is a hot-button issue. It's clearly heavily litigated. It is to avoid costly litigation. So if the school district said, no, you have to go with your legal name, and whatever's in the database, they would get sued. That's a legitimate reason why the school would not want to mandate that students be referred to that way. Third reason is... Oh, I'm sorry, go ahead. The third reason is because the school believes that it creates the best learning environment for the students because it is the most welcome and it's the most comfortable environment for those students to learn. Maybe your third answer was going to be one of my questions, which is, could it be the school's position that it is the student's choice? Like, that is their... Is that... Exactly. It is the student's... It's part of respecting the student's choice. If a student wishes to be called Robert versus Roberta, the school's position is, we're respecting that student's choice. Similarly, it doesn't matter about why. It doesn't matter. It doesn't get into whether or not that's a nickname. They like the nickname. They don't like their chosen name. If it's a gender issue or it's not a gender issue. The school district says, just call the students what they want to be called. Well then, isn't it problematic that, according to the complaint, students are permitted to choose one name with respect to one teacher and another name with respect to another teacher? No. It's not problematic. You could debate, certainly, whether or not it would be a better policy to have it be uniform, but it's not problematic to the school district's decision is to have the students have the choice and respecting their choice, whatever that is. I see I've run out of time. Thank you. You have one and a half minutes. Thank you, Your Honors. Three very brief points. One, I think my friend's statement of the policy shows the free speech issue, that this school wants teachers to speak consistent with students' preferences. There cannot be any other area, any of the curriculum, where the school says our policy is you teach according to the students' preferences. That shows that this is not a government message. This is the imposition of the students' message on the teacher and it violates compelled speech in all those ways. Secondly, on the area of comparators, we've talked about comparators. The question whether we could go back down and prove some of the other comparators, other teachers, were Methodists and not Evangelicals or were Catholics or Jews or however we might be. Maybe we could go back down and do some of that pleading or discovery and proof. But I would say, A, that's just not Sherbert. Sherbert, remember, there's denial of unemployment benefits because it's Sunday. It's not a good reason to take Sunday off for religious reasons. And the Supreme Court said, no, that's religious discrimination to say that the religious accommodation is not a good reason, but all these other reasons are good reasons. So we think we've shown religious discrimination, even as to the comparators. And finally on comparators, remember, comparators are for summary judgment, not for 12B6 under this Court's principles. So under Norgren, which is a similar case decided by here not long ago, that was the refrain. Comparators are for summary judgment, not for pleading. And so at this stage, comparators are not necessary if they could be shown. For that reason, we think the policy violates the Constitution and should be decided not unlike the concurrence Justice Kelley gave in Lindmar Community School District. Of all the policies we could have, this policy still falls short of the Constitution. We'd ask the Court to reverse and remand. Thank you very much, Counsel. We appreciate your argument today. It's been very helpful. The case is submitted. We'll render a decision as soon as possible. Does that conclude?